**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DELONTE LEWIS,

    Plaintiff,

    v.                                                           Civil Action No.:  CCB-22-842

CORR. OFFICER CHINYERE OKALA,

    Defendant.

**MEMORANDUM**

In response to the above-entitled civil rights complaint, defendant Officer Chinyere Okala, a correctional officer at Jessup Correctional Institution ("JCI"), filed a Motion to Dismiss or, in the alternative, for Summary Judgment.  ECF No. 9.  Also pending is defendant's Motion to Seal medical records belonging to plaintiff Delonte Lewis which the court now grants.  ECF No. 11.

Lewis has opposed defendant Okala's motion.  ECF No. 16.  Counsel for defendant filed a status report pursuant to this court's order of September 16, 2022, advising that Lewis was provided with two separate opportunities to watch the surveillance video submitted as an exhibit by defendant but refused on both occasions.  ECF No. 15.

No hearing is required.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, defendant's motion, construed as a Motion for Summary Judgment, shall be granted and judgment will be entered in favor of Okala.

**Background**

Lewis asserts that on February 14, 2022, at approximately 1:00 p.m., he was assaulted by defendant Officer Okala.  ECF No. 1 at 6.  He claims that prior to the assault, Okala never gave him an order to follow, nor did he follow proper procedure.  *Id*.  Lewis states that "[s]everal

correctional officers including the Captain reviewed the video footage" and "agreed that the correctional officer was indeed in the wrong." *Id*.  He also claims that he was offered a bribe by Okala in exchange for refraining from pursuing his claim any further.  *Id*.  As relief, Lewis seeks damages of one million dollars.  *Id*. at 7.

At the time and on the date in question, inmates at JCI were returning to their cells for lock-in and only the inmate tier workers were out of their cells.  Lewis was a tier worker.  When Lewis was in the lobby of the building, Okala observed Lewis pick up a trash bag, exit the building, put the trash into a container in the courtyard, and return to the lobby.  ECF No. 9-5 at ¶ 3.

Another inmate, Alvin Chun, took trash out of the lobby after Lewis had returned.  Lewis, who was not carrying any trash, followed Chun into the courtyard.  The two inmates walked over to the trash receptacle and Chun dropped the trash into the receptacle.  Chun then turned to face the building, reached into his pants, retrieved an unknown object, and gave it to Lewis.  ECF No. 9-5 at ¶ 3, *see also* ECF No. 9-3 (DVD surveillance video).  When Lewis and Chun approached the door of the building, Lewis was still in possession of the object Chun passed to him.  *Id*.

Okala met Lewis at the door, told him he saw Chun pass something to him, and gave Lewis a direct order to surrender the object.  ECF No. 9-5 at ¶ 3, ECF No. 9-3.  Okala told Lewis that if he surrendered the contraband immediately, he would not face any disciplinary action.  ECF No. 9-5 at ¶ 3.  Lewis refused to surrender the contraband.  *Id*.  After a second direct order, Lewis again refused, told Okala to get out of his face, and walked away from the building into the courtyard. *Id*. at ¶ 4, ECF No. 9-3.

Okala states he was concerned because he did not know if the contraband was a weapon, drugs, or something else.  ECF No. 9-5 at ¶¶ 6, 9, and 11.  As Lewis was walking away from the building, Okala called for backup to assist in detaining Lewis.  *Id*. at ¶ 7.  Okala began following

Lewis from behind and, to ensure Lewis could not use a weapon to hurt someone or ingest any drugs or otherwise dispose of the contraband, Okala grabbed Lewis's arms and held them down to his side.  Okala tried to guide Lewis as both were walking and continued to order Lewis to relinquish the contraband.  *Id*. at ¶¶ 7, 8.

While Okala was attempting to stop Lewis's further progress away from the building, Lewis threatened Okala and tried to break away from Okala's hold.  ECF No. 9-5 at ¶¶ 7, 8, 9; ECF No. 9-3.  Lewis was able to get his right arm free from Okala's hold and continued to try to break free.  *Id*.  When Lewis tried to run forward, Okala guided him to the ground.  *Id*. at ¶ 9; ECF No. 9-3.  The urgency in stopping Lewis's progress away from the building and toward another arose out of Okala's concern that the unknown contraband could have been passed to someone else or, had it been a weapon, used to assault someone.  ECF No. 9-5 at ¶¶ 6, 9.  After Lewis was on the ground, he managed to get both arms free and extended them away from Okala.  *Id*. at ¶ 10. Okala controlled both of Lewis's arms as other officers arrived on the scene to assist in restraining Lewis.  *Id*.  Lewis continued to resist after the other officers arrived.  *Id*.  Video surveillance footage supports Okala's account of the incident, but does not include sound.  ECF No. 9-3 (filed separately).

Once the officers managed to handcuff Lewis, he was escorted to medical where he declined any treatment.  ECF No. 9-6 at 22, (Report of Officer Ephraim Obuamah).  Lewis was then placed on administrative segregation pending adjustment.  *Id*. at 9, 23.

A Notice of Inmate Rule Violation was issued charging Lewis with violation of Rules 100 (engage in a disruptive act); 315 (possess or pass contraband); 316 (disobey an order); and 402 (enter or be in a location without authorization).  ECF No. 9-8 at 3.  Lewis later agreed to enter a guilty plea as to Rules 315, 316, and 402 in exchange for dismissal of the Rule 100 charge.  *Id*. at

6-10.  As a penalty, Lewis was given 15 days of segregation and lost 30 days of good conduct credit.  *Id.* at 9.

The item that was passed to Lewis was a paper cup with three Ibuprofen tablets in it.  ECF No. 9-6 at 7.  According to Lewis, he showed Okala what was in his hand and told him it was his medication.  ECF No. 16 at 1.  Lewis does not explain why he needed to retrieve the medication from Chun outside, nor does he offer any explanation as to why Chun hid the medication in the front of his pants.

## Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Anderson*, 477 U.S. at 247-48.  The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).  At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

4

**Analysis**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  This prohibition "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation.  *Williams*, 77 F.3d at 761.  On the subjective element, an inmate must show that the guards used force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  In assessing this element, a court should consider "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat . . . ;" and "(4) 'any efforts made to temper the severity of a forceful response.'"  *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force.  *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).  "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9).  Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury.  *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not

lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

Okala states he relied on a legitimate security interest in deciding what his actions would be. Lewis has failed to refute those interests and, instead, insists that the medication handed to him by Chun was medication that belonged to Lewis that he had dropped. ECF No. 16 at 1. Lewis focuses on whether Okala gave him an order to relinquish what he had in his hand. *Id*. The exchange between Okala and Lewis, as memorialized in the video surveillance, appears to involve Lewis refusing to do something asked of him and shows his attempt to walk away from Okala. This supports what Okala claims occurred during the incident.

The video footage, like other evidence or exhibits, is construed in the light most favorable to Lewis as the nonmovant. *See Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019). In *Scott v. Harris,* 550 U.S. 372, 380 (2007), a summary judgment case, the Supreme Court said that, when "opposing parties tell two different stories," one of which is blatantly contradicted by video evidence in the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts . . . ." Rather, a court should "view[] the facts in the light depicted by the videotape." *Id.* at 381; *see also Sawyer v. Asbury*, 537 F. App'x. 283, 291 (4th Cir. 2013).

In *Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272 (4th Cir. 2011), a summary judgment case, the court observed that the principle articulated in *Scott* does not license a court to reject one side's account as a matter of law if the "documentary evidence, such as a video," merely "offers *some* support for [the other side's] version of events." *Id.* at 276 (emphasis in original).

6

Rather, the video controls only where it "'blatantly contradict[s]'" one side's testimonial account. *Id*. (quoting *Scott*, 550 U.S. at 380). "Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court" when resolving a summary judgment motion "if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (applying *Scott* in context of motion for judgment as a matter of law).

While the video surveillance submitted in this case does not resolve the dispute between Lewis and Okala regarding the details of their verbal exchange, it does resolve the issue regarding Lewis's resistance to Okala and the other officers who were attempting to restrain him. It is clear that Lewis is attempting to flee from Okala and it is equally clear that he is resisting attempts to place him in restraints. Additionally, the video does not support Lewis's claim that Okala "slammed" him to the ground. Rather, Okala can be seen pulling Lewis to the ground on the grassy area next to the cement walkway where they were walking thereby preventing any physical injury to Lewis. *See* ECF No. 10 (medical records showing no harm to Lewis as a result of this incident).

Where the use of force against a prisoner is tempered and reasonable in light of the circumstances as they existed at the time of the incident, the Eighth Amendment has not been violated. Rather, deliberate indifference "requires two showings: '[T]he prison official must have both 'subjectively recognized a risk of substantial harm' and 'subjectively recognized that his actions were inappropriate in light of that risk.'" *Campbell v. Florian*, 972 F.3d 385, 395 (4th Cir. 2020) (quoting *Anderson*, 877 F.3d at 545). Here, Okala did only what was necessary to gain Lewis's compliance with a lawful order and to maintain the security of the institution. Okala is therefore entitled to summary judgment.

## Conclusion

By separate order which follows, defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted and judgment shall be entered in favor of defendant Okala.  Additionally, the Motion to Seal Lewis's confidential medical records shall also be granted.


| 11/04/2022 | /s/ |
| --- | --- |
| Date | Catherine C. Blake |
| | United States District Judge |